PER CURIAM.
J. Kenneth Kinsella, a real estate developer, and Peter Wenzel wanted to buy a piece of property for later development. Wenzel and Kinsella, however, did not have the necessary capital to develop the property. Consequently, Kinsella contacted Paul Steinberg since he had contacts with Japanese Development & Construction Co., Ltd. [JDC], a Japanese company that was interested in developing property in South Florida.
Kinsella and Wenzel met with Steinberg and agreed that if Steinberg would find a joint partner who would provide the financing to develop the project, they would give Steinberg a twenty percent (20%) interest in their share of the project. Shortly thereafter, Kinsella and Wenzel formed Brickell Station Towers, Inc. [BST] each owning fifty percent of the stocks. Subsequently, a letter on Wenzel Investment Co.’s letterhead was written to Steinberg signed by “Peter Wen-zel, President.” The letter stated, in part, as follows:
This letter will confirm the telephone conversation between you and Mr. Kinsella wherein he agreed to give Japan Development & Construction Co., Ltd. a fifty percent interest in the Brickell Station Tower project for providing the cash equity required to obtain an estimated forty eight million U.S. dollar funding for the project on a basis acceptable to us.
*849 [[Image here]]
It is our understanding that in lieu of earning a cash fee, you have agreed to accept a twenty per cent interest of our net remaining portion of the venture; i.e. 10% of the project if it is a fifty/fifty deal.
Kinsella purchased the property. Months later, the joint venture agreement was executed. Thereafter, Steinberg demanded the twenty percent (20%) interest in the project that he had been allegedly promised. However, no interest in the project was transferred to Steinberg. Consequently, Stein-berg initiated an action for breach of a written contract against BST, Wenzel, Kinsella and Wenzel Investment Co. During trial, Steinberg amended his complaint to add a count for breach of an oral contract.
At the close of Steinberg’s case and at the close of all the evidence, the defendants moved for a directed verdict arguing, in part, that Steinberg’s claim was barred by the defense of illegality. Defense counsel argued that under Florida law, it is unlawful for a person to act as a mortgage broker without a mortgage broker’s license issued by the State of Florida. § 494.04(1), Fla.Stat. (1983). The trial court denied the motions.
The jury found that defendants BST, Wen-zel and Kinsella breached a contract and awarded damages to Steinberg. The jury, however, found that defendant Wenzel Investment Co. had not breached a contract. Post trial, the trial court granted Kinsella’s and Wenzel’s renewed motion for directed verdict, thereby leaving only BST liable to Steinberg. Numerous points were raised on appeal and cross-appeal.
The only issue that we are addressing is whether the trial court erred in denying the motions for directed verdict based on the defense of illegality as raised by the defendants. Akin to that issue is whether Stein-berg, as a matter of law, was acting as a mortgage broker without a mortgage broker’s license issued by the State of Florida in violation of Chapter 494, Florida Statutes (1983).
The Mortgage Brokerage Act prohibits an unlicensed person to act as a mortgage broker. § 494.04(1), Fla.Stat. (1983). A mortgage broker is “any person not exempt under s. 494.03 who for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly makes, negotiates, acquires or sells, or offers to make, negotiate, acquire or sell a mortgage loan.” § 494.-02(3), Fla.Stat. (1983). Moreover, section 494.08(4)(a), Florida Statutes (1983), provides that “[n]o unlicensed person shall charge or receive any commission, bonus or fee in connection with arranging for, negotiating, selling, or purchasing a mortgage loan.”
We find that, as a matter of law, Steinberg was acting as a mortgage broker. There is no doubt that the alleged agreement which provided that Steinberg would receive a twenty percent (20%) interest in the project conferred upon Steinberg a gain for arranging and/or negotiating a mortgage loan. See generally, Op'. 'Att’y Gen. Fla. 064-74 (1964) (arrangement between licensed mortgage broker and real estate broker whereby mortgage broker pays the tuition for the real estate broker to attend a class in exchange for referral of mortgage applications violates section 494.08; arrangement between real estate broker and mortgage broker whereby real estate broker would receive points which are exchangeable for gifts, in exchange for the referral of prospective mortgage loan applicants violates section 494.08). This conclusion is also supported by Steinberg’s testimony at trial. During trial Steinberg testified as follows:
Q. Now as this transaction was structured Mr. Steinberg what JDC did was to make a mortgage loan to this joint venture; correct?
A. That is correct.
[[Image here]]
Q. It is your position in this lawsuit that you arranged this joint venture, correct?
A. I arranged for Japan Development Corporation to provide the financing to build the building, and they put up whatever cash equity they needed, which happen to be zero.
Q. So, you arranged for JDC to provide financing.
A. Yes, Sir.
*850 Moreover, Steinberg’s counsel during oral argument admitted that if Steinberg would not have arranged for JDC to provide the financing, Steinberg would not had been entitled to compensation.
In conclusion, we find that it was error for the trial court to deny the motions for directed verdict. As a matter of law, the oral and written contracts that Steinberg is attempting to enforce are for a mortgage brokerage fee. Steinberg is not licensed as a mortgage broker pursuant to Chapter 494, Florida Statutes (1983). Accordingly, such a contract is illegal and, therefore, unenforceable. See Meadow of Beautiful Bronson, Inc. v. E.G.L. Inv. Corp., 353 So.2d 199 (Fla. 3d DCA 1977), cert. denied, 360 So.2d 1248 (Fla. 1978); D & L Harrod, Inc. v. U.S. Precast Corp., 322 So.2d 630 (Fla. 3d DCA 1975).
For the foregoing reasons, we reverse the denial of the motion for directed verdict and remand with directions to enter judgment in accordance with this opinion.
In light of our decision, we do not need to address the remaining issues raised on appeal or cross-appeal.
Reversed and remanded with directions.